**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

EDWARD J. GOODMAN LIFE INCOME    :
TRUST, et al, On behalf Themselves and    :
All Others Similarly Situated,    :
                               :
               Plaintiffs,    :      Lead Case No.
vs.                             :      8:06-CV-01716-SDM-EAJ
                               :
JABIL CIRCUIT, INC.,  et al,       :      CLASS ACTION
                               :
                               :      **DISPOSITIVE MOTION**
               Defendants.    :

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT KPMG LLP'S MOTION TO DISMISS PLAINTIFFS'
THIRD AMENDED CLASS ACTION COMPLAINT**

**<u>ORAL ARGUMENT REQUESTED</u>**

TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION ..................................................................................................................1

I.     PLAINTIFFS' CLAIMS AGAINST KPMG ARE TIME-BARRED. ...............................1

     **A.**     **The Court Can Grant KPMG's Motion on Statute of Limitations**
           **Grounds Because the Time Bar is Apparent from the Complaint.**...................1

     **B.**     **The Company's Statements Did Not Relieve Plaintiffs of Duty of**
           **Inquiry.** ......................................................................................................5

II.     PLAINTIFFS HAVE NOT PLED SCIENTER AS TO KPMG. ........................................7

     **A.**     **The Size, Timing, and Nature of Jabil's Restatement Still Fails to**
           **Support an Inference of Severe Recklessness.**.........................................7

     **B.**     **Plaintiffs' Attempt to Allege Other "Red Flags" Fails.**...................................11

III.     PLAINTIFFS FAIL TO PLEAD PARTICULARIZED FACTS SHOWING
     THAT ANY KPMG STATEMENT WAS FALSE.............................................................14

CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

*AFC Enterprises, Inc. Securities Litigation*,
   348 F. Supp. 2d 1363 (D. Ga. 2004) ..........................................................................8

*Bryant v. Avado Brands, Inc.*,
   187 F.3d 1271 (11th Cir. 1999) ................................................................................11

*Carley Capital v. Deloitte & Touche, L.L.P.*,
   27 F. Supp. 2d 1324 (N.D. Ga. 2004) ......................................................................12

*In re Cirrus Logic, Inc.*,
   2008 U.S. Dist. LEXIS 71195 (W.D. Tex. Aug. 28, 2008) ......................................13

*In re Complete Management Inc.*,
   153 F. Supp. 2d 314 (S.D.N.Y. 2001) ......................................................................11

*Cordova v. Lehman Brothers, Inc.*,
   526 F. Supp. 2d 1305 (S.D. Fla. 2007) ......................................................................5

*D.E. & J. Ltd. v. Conaway*,
   284 F. Supp. 2d 719 (E.D. Mich. 2003) ...................................................................14

*In re DaimlerChrysler AG Securities Litigation*,
   269 F. Supp. 2d 508 (D. Del. 2003) ...........................................................................6

*Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*,
   454 F.3d 1168 (10th Cir. 2006) ................................................................................15

*In re Faro Securities Litigation*,
   2007 WL 430731 (M.D. Fla. Feb. 3, 2007) ..............................................................14

*In re Finisar Corp.*,
   542 F. Supp. 2d 980 (N.D. Cal. 2008) ......................................................................13

*Grand Lodge of Pennsylvania v. Peters*,
   550 F. Supp. 2d 1363 (M.D. Fla. 2008) ................................................................7, 12

*Holmes v. Baker*,
   166 F. Supp. 2d 1362 (S.D. Fla. 2001) .....................................................................12

*In re IKON Office Solutions, Inc. Securities Litigation*,
   277 F.3d 658 (3d Cir. 2002) .....................................................................................15

*Jacobs v. Coopers & Lybrand, L.L.P.*,
  1999 U.S. Dist. LEXIS 2102 (S.D.N.Y. Mar. 1, 1999) ..........................................9, 11

*Lentell v. Merrill Lynch & Co., Inc.*,
  396 F.3d 161 (2d Cir 2005)..............................................................................................6

*Levitt v. Bear Sterns & Co.*,
  340 F.3d 94 (2d Cir. 2003)...............................................................................................4

*Ley v. Visteon Corp.*,
  2008 U.S. App. LEXIS 20994 (6th Cir. Oct. 6, 2008)............................................8, 10

*Marks v. CDW Comp. Cntrs., Inc.*,
  122 F.3d 363 (7th Cir. 1997) ..........................................................................................2

*Milman v. Box Hill Systems Corp.*,
  72 F. Supp. 2d 220 (S.D.N.Y. 1999).................................................................................6

*Newman v. Warnaco Group, Inc.*,
  335 F.3d 187 (2d Cir. 2003)..............................................................................................6

*Nivram Corp. v. Hardcourt Brace Jovanovich, Inc.*,
  840 F. Supp. 243 (S.D.N.Y. 1993)....................................................................................6

*In re Oxford Health Plans Inc. Securities Litigation*,
  51 F. Supp. 2d 290 (S.D.N.Y. 1999)...............................................................................11

*PR Diamonds Inc. v. Chandler*,
  364 F.3d 671 (6th Cir. 2004) .....................................................................................7, 13

*In re Qwest Communications International, Inc. Securities Litigation*,
  396 F. Supp. 2d 1178 (D. Col. 2004).............................................................................11

*In re Recoton Securities Litigation*,
  358 F. Supp. 2d 1130 (M.D. Fla. 2005).........................................................................14

*Shah v. Morgan Stanley*,
  2004 WL 2346716 (S.D.N.Y. Oct. 19, 2004)..................................................................5

*Spiegel v. Siegel*,
  2008 U.S. Dist. LEXIS 3185 (S.D. Fla. Jan. 15, 2008) ..................................................2

*Sterlin v. Biomune System*,
  154 F.3d 1191 (10th Cir. 1998) ................................................................2

*In re Sunterra Corp. Securities Litigation*,
  199 F. Supp. 2d 1308 (M.D. Fla. 2002) ..................................................12

*Tello v. Dean Witter Reynolds Inc.*,
  494 F.3d 956 (11th Cir. 2007) .............................................................2, 4

*Tello v. Dean Witter Reynolds Inc.*,
  410 F.3d 1275 (11th Cir. 2005) ...............................................................2

*Theoharous v. Fong*,
  256 F.3d 1219 (11th Cir. 2001) ...............................................................2

*Trainer Wortham & Co., Inc. v. Betz*,
  2008 WL 4454233 (Oct. 6, 2008) ............................................................2

*In re Tyco International Ltd. Multidistrict Litigation*,
  2004 U.S. Dist. LEXIS 20733 (D.N.H. Oct. 14, 2004) ...........................11

*United States v. Reyes*,
  2007 U.S. Dist. LEXIS 41632 (N.D. Cal. May 30, 2007) ....................9, 10

*United States v. Shanahan*,
  2008 U.S. Dist. LEXIS 29868 (E.D. Mo. Mar. 31, 2008) .........................9

*Winters v. Stemberg*,
  529 F. Supp. 2d 237 (D. Mass. 2008) ....................................................13

*WorldCom, Inc. Securities Litigation*,
  294 F. Supp. 2d 431 (S.D.N.Y. 2003).......................................................6

*In re Zoran Corp. Derivative Litigation*,
  511 F. Supp. 2d 986 (N.D. Cal. 2007) ....................................................13

**INTRODUCTION**

Plaintiffs' Opposition Brief to KPMG LLP's ("KPMG") Motion to Dismiss offers no meaningful challenge to the three independent bases outlined by KPMG for dismissing the claims against it.  The Opposition ("Opp. Br.") merely repeats the allegations in the Third Amended Complaint ("TAC"), applies flawed logic and misreads authorities. Simply put, Plaintiffs offer no ground upon which the claims against KPMG can stand.

**I.      PLAINTIFFS' CLAIMS AGAINST KPMG ARE TIME-BARRED.**

By May 11, 2006, two years before Plaintiffs decided to add KPMG to this action, they had more than notice of a "possibility" of a claim against Jabil Circuit, Inc.'s auditors; they had the very facts they now allege as the basis of their claims.  KPMG's Motion to Dismiss ("KPMG Br.") at 11-16.  In their Opposition, Plaintiffs do not seriously dispute, nor could they, that their claims against KPMG are grounded in the same facts identified in the March 18, 2006 *Wall Street Journal* article, alleged in the April 2006 derivative actions, and that formed the basis of the SEC's investigation in May 2006.  As shown below, their efforts to avoid the plain untimeliness of these new claims fail.

**A.      The Court Can Grant KPMG's Motion on Statute of Limitations Grounds Because the Time Bar is Apparent from the Complaint.**

Plaintiffs first try to avoid the lateness of their Complaint by rewriting the Eleventh Circuit's standard for inquiry notice.  Plaintiffs argue that "inquiry notice cannot begin until plaintiff can plead a claim."  Opp. Br. at 35.  Claiming that plaintiffs do not have to inquire into the facts until they have all the facts turns the concept of "inquiry notice" on its head.  Not surprisingly, this statement is not consistent with the law of the Eleventh Circuit, which holds that inquiry notice "occurs when there is factual evidence of the

*possibility* of securities fraud that would cause a reasonable person to investigate whether his or her legal rights had been infringed. Actual proof of securities fraud is not required." *Tello v. Dean Witter Reynolds Inc.,* 494 F.3d 956, 968 (11th Cir. 2007) ("*Tello II*"); *see also Theoharous v. Fong,* 256 F.3d 1219, 1228 (11th Cir. 2001) (statute runs when plaintiff learns facts "that would lead a reasonable person to begin investigating the possibility that his legal rights had been infringed"); KPMG Br. at 17-18 (citing cases).

Plaintiffs' invocation of the first *Tello* decision, *Tello v. Dean Witter Reynolds Inc.*, 410 F.3d 1275, 1283-85 (11th Cir. 2005) ("*Tello I*"), is unavailing. In *Tello I*, the Eleventh Circuit recognized that inquiry notice does not force plaintiffs to file a claim before they are "able, with the exercise of reasonable diligence (whether or not actually exercised), to ascertain the information" on which they base their claims. 410 F.3d at 1284, quoting *Marks v. CDW Comp. Cntrs., Inc.*, 122 F.3d 363, 368 (7th Cir. 1997).[1] As shown, the facts on which Plaintiffs here premise their claims against KPMG were available to them in March 2006.[2] KPMG Br. at 15-16.

Plaintiffs' Opposition shows as much. They argue, for instance, that the late filing of Form 4s "[is] a tell tale, in fact, glaring, indicator of intentional backdating." Opp.

---

[1] This case is distinguishable from the few decisions that Plaintiffs cite. In *Spiegel v. Siegel*, 2008 U.S. Dist. LEXIS 3185, at *10 (S.D. Fla. Jan. 15, 2008), the court merely held that "a plaintiff cannot be deemed to be on inquiry notice of a fraud that has, in fact, not yet occurred." *Id.,* at *14. Plaintiffs' other case, *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1202 (10th Cir. 1998), supports a finding of inquiry notice here. *Id.* (finding inquiry notice was triggered by a news article, but remanding because record was not clear as to whether there were facts available to plaintiff to state a claim at that time).

[2] The Supreme Court recently requested briefing from the Solicitor General concerning the appropriate standard for inquiry notice. *See Trainer Wortham & Co., Inc. v. Betz*, -- S.Ct. --, 2008 WL 4454233 (Oct. 6, 2008). Though the parties to that action find differences in the formulations used in other circuits, all recognize that inquiry notice in the Eleventh Circuit is triggered by the "possibility" of a claim. Plaintiffs' arguments, on the other hand, mirror the Ninth Circuit's approach. More importantly, putative differences among the courts do not alter the result here: The central facts that *Plaintiffs themselves allege* were known or available to them more than two years before they filed their claims.

Br. at 29.  Plaintiffs were fully capable of ascertaining this "glaring" fact in March 2006, since the forms were publicly filed.  They argue that "Jabil identified APB 25 as one of its '*significant accounting policies*'" and "emphasized the importance of compliance with APB 25" in its public filings.  *Id*. at 32 (emphasis added by Plaintiffs).  Again, these are public filings and were no secret.  Plaintiffs argue that an embezzlement scheme by a Jabil employee is "entirely related to the fraud alleged" against KPMG, and is sufficient to demonstrate that the "Report on Internal Controls for 2005 was false."  *Id*. at 30-32.  However, according to the Complaint, that embezzlement was made public no later than March 4, 2006.  TAC ¶174.  Plaintiffs even argue that KPMG would be "severely reckless not to know of the March 18, 2006 *Wall Street Journal* article, which identified Jabil" and was sufficient to cause KPMG "to issue an adverse or qualified opinion."  Opp. Br. at 24-25.  Of course, the article was equally available to Plaintiffs, as was knowledge of KPMG's purported failure to issue "an adverse or qualified opinion" upon its publication.

Plaintiffs are unable to explain what in the November or December 2006 disclosures supposedly gave them the notion that the auditors committed fraud.  Opp. Br. at 36.  They argue that in November, "after months of denial," the company disclosed "for the first time" that its options accounting was in error.  *Id.*  Plaintiffs omit to state that they had filed a lawsuit alleging the same facts months earlier.  KPMG Br. at 16-17.  This November disclosure merely affirmed what Plaintiffs (and the April derivative shareholder plaintiffs) already had alleged.  Plaintiffs also argue that a December disclosure told them the errors could affect "historical financial statements *all the way back to 1996*," and this somehow clued them in to the prospect of auditor fraud.  Opp. Br. at 36-37 (boldface type and italics in

original).  Plaintiffs omit to state that both the March 18, 2006 *Wall Street Journal* article and

the derivative complaints alleged errors "all the way back" to 1998.  Why 1996 points to

auditor complicity but 1998 does not is something Plaintiffs do not, and cannot, explain.[3]

Nor did Jabil's March 2007 Form 8-K or May 2007 Form 10-K contain

otherwise unknown "critical" facts supporting a claim against KPMG.  Opp. Br. at 37.  To

say that Plaintiffs mischaracterize Jabil's disclosure is an understatement.  The March 2007

disclosure merely announced more details about the restatement, including, for example, the

amount ($54.3 million over 10 years) and that accounting errors were *not* the result of

intentional manipulation of option grants by Jabil's management.  *See* Jabil 2006 SEC Form

10-K, filed May 15, 2007, at 2.  And, contrary to Plaintiffs' contention, the May 2007

disclosure does not intimate, let alone state, that "KPMG had apparently not properly

considered [] documentation" related to option grants.  *Id.*  KPMG is not even mentioned in

the portion of the disclosures relating to Jabil's restatement.  It is not surprising, then, that

this phantom "critical fact" was never mentioned in Plaintiffs' first attempt to state a claim

against KPMG.  *See* Second Amended Complaint ¶¶168-172.

On the other hand, Plaintiffs barely mention the prize-winning March 18,

2006 *Wall Street Journal* article that spawned Jabil's and a host of other restatements and

investigations.  Recognizing that the article singled out Jabil, Plaintiffs make the

extraordinary claim that the article was insufficient to trigger inquiry notice because it did not

mention KPMG.  Opp. Br. at 38-39.  Plaintiffs' lack of authority for their position is not

---

[3]  Plaintiffs' cited authority is inapposite.  In *Levitt v. Bear Stearns & Co.*, 340 F.3d 94 (2d Cir. 2003), the
plaintiffs' securities fraud allegations were based on facts that did not, and could not, have come to their
attention until years after the alleged conduct occurred.

surprising.  *Tello* found inquiry notice of possible claims against Dean Witter triggered by a

*Washington Post* article that did not name Dean Witter.  *See Tello II*, 494 F.3d at 975.

Plaintiffs labor to persuade the Court to ignore the fact that in April and May

2006, Jabil shareholders commenced two derivative suits alleging the *same* conduct

underlying the claims against KPMG, arguing that "[n]either of the derivative suits was

based on the same theory as this case – indeed, neither derivative action brought securities

fraud claims."  Opp. Br. at 38.  This argument misses the mark.  Courts have made clear that

the dispositive factor is whether the lawsuit is based on similar factual allegations, not an

identical legal theory.  *See Shah v. Morgan Stanley,* 2004 WL 2346716, at *11 (S.D.N.Y.

Oct. 19, 2004) (derivative suits were similar so that the plaintiff "should have been capable

of perceiving the general fraudulent scheme based on the information available to [him].").

**B.    The Company's Statements Did Not Relieve Plaintiffs of Duty of Inquiry.**

Finally, Plaintiffs also attempt to evade the statue of limitations on procedural

grounds, arguing that the determination of whether they were on inquiry notice is an issue for

the trier of fact.  Opp. Br. at 40.  As this Court already held:  "A defendant may raise a statute

of limitations defense in a motion to dismiss for failure to state a claim 'when the complaint

shows on its face that the limitation period has run.'"  Mem. Op. at 8 (citation omitted).

Plaintiffs' authorities are not to the contrary.  *Accord Cordova v. Lehman Bros., Inc.*, 526 F.

Supp. 2d. 1305, 1323-24 (S.D. Fla. 2007).[4]  Here, Plaintiffs' efforts to create an issue of fact

flatly contradict their own assertions, and their arguments quickly become nonsensical.

---

[4] Plaintiffs' other authorities are equally inapposite.  Opp. Br. at 40.  Those courts did resolve the issue of inquiry notice on a motion to dismiss, but concluded, on distinguishable facts, that the notice was insufficient. *See Nivram Corp. v. Hardcourt Brace Jovanovich, Inc.*, 840 F. Supp. 243, 252 (S.D.N.Y. 1993) (changing

Plaintiffs suggest that denials by Jabil management somehow create a question of fact concerning the possibility of a claim against KPMG.  Opp at 41-42.  Plaintiffs (again) omit to mention that they filed suit against Jabil and its management despite these denials.  Plaintiffs cannot offer any explanation for why the Company's denials had no credence against the people who made them, but created a roadblock to claims against KPMG, which did not.  Indeed, they claim that despite the Company's denials, the market reacted negatively to the March 2006 disclosures.  TAC ¶¶187-191, 193, 303-305; *see also* Opp. Br. at 38-39.  It makes no sense to claim that the market reacted to an alleged fraud and yet had no notice of a "fraud on the market."[5]

Plaintiffs' suggestion that inquiry notice was not triggered because in July 2006, KPMG continued to "certify Jabil's financial statements and internal controls" (Opp. Br. at 43) also is a red herring.  Jabil's Form 10-Q was an un-audited quarterly financial statement for a period that was not restated.  Buried on page 47 of the 52-page report, Jabil merely recounts an already-disclosed historical event:  that KPMG had issued an internal control report in 2005.  Indeed, this statement was so insignificant to Plaintiffs, it did not even make it into their current *fifth*, or any prior, version of their 200-page Complaint.  For

---

financial forecasts insufficient); *Newman v. Warnaco Group, Inc.*, 335 F.3d 187, 194-95 (2d Cir. 2003) (single document containing contradicting information insufficient); *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 171 (2d Cir. 2005) (newspaper articles identifying conflict of interest did not identify falsity of statement).  In *Milman v. Box Hill Systems Corp.*, 72 F. Supp. 2d 220, 229 (S.D.N.Y. 1999), the court merely states, without explanation, that courts are "reluctant" to find inquiry notice under these circumstances.

[5] Neither *WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 431 (S.D.N.Y. 2003), nor *In re DaimlerChrysler AG Sec. Litig.*, 269 F. Supp. 2d 508, 518 (D. Del. 2003), involved the type of fact-based storm warnings found in this case.  In *DaimlerChrysler*, the court found that the storm warnings were nothing more than "media speculation," and the defendants' "words of comfort" were the result of "an aggressive, all-out campaign to counter" the negative news, including hiring experts "to ensure that the message 'sunk in.'"  In *WorldCom*, none of the news articles or other publicly available information considered was sufficiently specific to establish a probability of misconduct.  Here, in stark contrast, Plaintiffs allege that the publicly available facts established the statistical probability of the accounting errors at issue, triggering derivative actions and an SEC investigation on that precise issue.

Plaintiffs now to state that this is the reason they did not and could not consider claims against KPMG at an earlier date rings hollow.

Plaintiffs' Complaint and Opposition make clear that Plaintiffs had abundant notice of the facts underlying the claims they now assert against KPMG more than two years before they brought them.  These claims are now time barred and must be dismissed.

## II.     PLAINTIFFS HAVE NOT PLED SCIENTER AS TO KPMG.

Though Plaintiffs ignore the case law on point, the standard for pleading scienter "is *especially stringent* when the claim is brought against an outside auditor" and "entails a mental state so culpable that it 'approximates an *actual intent to aid* in the fraud being perpetrated by the audited company.'"  *PR Diamonds Inc. v. Chandler*, 364 F.3d 671, 693 (6th Cir. 2004) (citation omitted).  To show the auditors were reckless, the facts alleged must support a cogent and compelling inference that the purported audit was in fact no audit at all.  *See Grand Lodge of Pennsylvania v. Peters*, 550 F. Supp. 2d 1363, 1372 (M.D. Fla. 2008).  That standard is particularly difficult to show here, where even Plaintiffs must concede that "Jabil's restatement centered upon a single issue – backdated stock option-based compensation."  Opp. Br. at 16.  Plaintiffs' effort to conjure an inference of fraud from this "single issue" restatement never achieves coherence, much less the cogent and compelling inference required by *Tellabs* and the PSLRA.

### A.     The Size, Timing, and Nature of Jabil's Restatement Still Fails to Support an Inference of Severe Recklessness.

This Court has already rejected the argument that the Jabil restatement's size, timing, and nature supported an inference of scienter against anyone.  Mem. Op. at 34-35.

Plaintiffs persist.  In so doing, they ignore that the error here affected expenses, yet amounted to a tiny fraction of the company's total expenses.  KPMG Br. at 26-27.  They also ignore Jabil's financial statements as a whole – the billions of dollars in assets, liabilities, revenues and expenses accounted for – and look only at the restatement's impact on "earnings," by which they appear to mean net income.  In one year, Plaintiffs exclaim, the restatement decreased "earnings" by "an amazing *46.7%*."  Opp. Br. at 15 (emphasis in original).  Of course, they ignore the fact that the restatement increased these "earnings" the following year.  *See* KPMG Br. at 26.

Even Plaintiffs' own authority rejects this kind of manipulation.  In *AFC Enterprises, Inc. Securities Litigation*, 348 F. Supp. 2d 1363, 1372-73 (D. Ga. 2004), the court held that a restatement that wiped out *92%* of the company's earnings failed to support an inference of scienter because the restatement must be evaluated in terms of the company's "entire business operations."  Considered in the totality of the company's business operations, AFC's restatement reflected less than 1% of reported revenues and no more than 4.4% of expenses.  *Id.*  This small error was not the type that would "encourage the Court to infer fraud based on [] GAAP violations alone."  *Id.  See also Ley v. Visteon Corp.*, 2008 U.S. App. LEXIS 20994, at *38 (6th Cir. Oct. 6, 2008) (A restatement of *less than 6%* of a company's revenue over three years "was not sufficient to raise a strong inference of scienter.").  Placed in the context of KPMG's audit, which covered dozens of policies and financial statement areas, an error of this size and nature is not probative of scienter.

Plaintiffs also try to argue that this "single issue" restatement shows "no audit at all" because the accounting standard, APB 25, was simple and a significant accounting

policy.[6]  Opp. Br. at 16-17, 32-33.  Plaintiffs' argument ignores that courts presented with this issue have squarely rejected Plaintiffs' characterization of APB 25 as "simple."  *See* KPMG Br. at 15-16.  Indeed, if the application of APB 25 was as "simple" as Plaintiffs suggest, it would make no sense that the SEC's Office of the Chief Accountant provided the extensive guidance it did.  *See* TAC ¶50.  Nor would hundreds of companies, in the wake of the March 18, 2006 *Wall Street Journal* article, have announced errors in applying the standard.[7]  Perhaps most importantly, Plaintiffs make no effort to explain why the supposed simplicity of APB 25 makes a compelling case that the outside auditors must have committed fraud by failing to catch a company's error in applying the standard.  No court has so found, and Plaintiffs offer this Court no reason to be the first.

The closest Plaintiffs come to talking about the audit is their claim that KPMG could have "easily uncovered the grant lists that demonstrated widespread evidence of backdating and failure to apply APB 25."  Opp. Br. at 20.  The supposed absence of one audit procedure hardly supports a compelling inference that the entire audit was a nullity, but that is only one problem with this argument.  As KPMG pointed out in its Opening Brief, for all

---

[6]  Even the cases relied upon by Plaintiffs recognize that an error in applying one accounting principle would not amount to severe recklessness.  *See*, *e.g.*, *Jacobs v. Coopers & Lybrand, L.L.P.*, 1999 U.S. Dist. LEXIS 2102, at *42 (S.D.N.Y. Mar. 1, 1999) (recognizing that "failing to adhere to one or two Auditing Interpretations" would not support a finding of severe recklessness, but severe recklessness can only be inferred from particularized allegations that the auditor "disregarded many auditing interpretations") (cited at Opp. Br. at 13, 22).

[7] Plaintiffs' cases are not to the contrary.  In *United States v. Shanahan*, 2008 U.S. Dist. LEXIS 29868 (E.D. Mo. Mar. 31, 2008) and *United States v. Reyes*, 2007 U.S. Dist. LEXIS 41632 (N.D. Cal. May 30, 2007) the courts decided whether APB 25 was unconstitutionally vague and ambiguous in the context of a  criminal prosecution.  These courts did not hold that APB 25 is always clear or simple.  *See Reyes*, at *10 "[i]t is possible that APB 25 may provide inadequate guidance under some circumstances about how to record compensation expenses for stock options"); *Shanahan*, 2008 U.S. Dist. LEXIS 29868, at *25 ("the definition of measurement date may be unclear in some situations").  *Raviscent*, *Baan*, and *Middlesex* (cited in Opp. Br. at 16-17) did not involve claims against the outside auditors for misapplication of the accounting rule at issue, but against corporate executives for deliberate violations of the rule, and thus provide no meaningful guidance on whether KPMG's audit here was so lacking such that it amounted to "no audit at all."

the irrelevant matters thrown into the 200-plus pages of their Third Amended Complaint, Plaintiffs say little about what these documents are, how they would have shown the error, and how KPMG would or should have obtained them.  KPMG Br. at 30-31.  Apparently, what Plaintiffs mean is that there were multiple iterations of a given grant list, and that comparing the changes to these lists would show that the list was not "final" until after the putative grant date.  *See* Opp. Br. at 20 (referring to "changes to lists" and "various lists").  Plaintiffs do not explain why KPMG should have expected multiple iterations of the grant lists, and why these iterations would be correctly dated so as to show the error.

Plaintiffs' Oppositions contradict any such inference.  On the first page of their Opposition to Jabil's motion, Plaintiffs argue that – if there was any fraud here at all – it could not be accomplished "without the falsification of documents."  Opp. Br. at 1.  It is neither cogent nor coherent to claim that the auditors would have received complete documents that were accurately dated, but also that "documents evidencing stock option grants were falsified to appear as though stock options were granted earlier than they truthfully were."  *Id*.

Plaintiffs also argue that KPMG's fees, familiarity with the company, and length of time serving as Jabil's public auditor – ordinary factors common to many audits – somehow establish KPMG's severely reckless intent.  Opp. Br. at 21-23.  Logic and controlling authority, however, dispel these myths.  *See* KPMG Br. at 35-36.  Even the cases cited by Plaintiffs agree that an auditor's desire "to protect and to enhance the fees it received" is "insufficient to establish motive of an accounting firm to commit fraud."  *In re Oxford Health Plans Inc. Sec. Litig.*, 51 F. Supp. 2d 290, 294 (S.D.N.Y. 1999); *see also In re*

*Complete Mgmt. Inc.*, 153 F. Supp. 2d 314 (S.D.N.Y. 2001) ("mere fact that Andersen was paid by CMI to perform the audit does not support an inference of scienter"); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1285 (11th Cir. 1999) (rejecting allegations of motive as a sufficient basis for scienter).[8]

The case cited by Plaintiffs on this point does not suggest that length of time auditing a client, or intimate familiarity with the client's business, supports an inference of scienter.  *See Jacobs*, 1999 U.S. Dist. LEXIS 2102, at *42.  Rather, in *Jacobs*, the court found that the fact that the auditors knew that information provided by the company in the current audit contradicted *specific* customer information the auditors learned in the prior year's audit supported an inference of scienter.  *Id.*  Likewise, in *Carley Capital v. Deloitte & Touche, L.L.P.*, 27 F. Supp. 2d 1324, 1329 (N.D. Ga. 2004), the length of time the defendant had audited the company was not the issue, but the fact that the accounting firm performed extensive business consulting services, "directed [the company's] accounting and performed extensive analyses of [the company's] systems integration efforts" was deemed significant.  No such facts are alleged here.

**B.    Plaintiffs' Attempt to Allege Other "Red Flags" Fails.**

As this Court knows, "'red flags' are those facts which come to the attention of an auditor which would place an auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors."  *In re Sunterra Corp. Sec. Litig.,* 199 F.

---

[8] The other cases cited by Plaintiffs (Opp. Br. at 21) only suggest that an auditor may be motivated by a desire to earn lucrative consulting fees at the expense of their audit work – facts not alleged here – and even then that inference of scienter is "relatively weak."  *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 396 F. Supp. 2d 1178, 1208 (D. Col. 2004).  In addition, *In re Tyco International Ltd. Multidistrict Litigation*, 2004 U.S. Dist. LEXIS 20733, at*39-*41 (D.N.H. Oct. 14, 2004), presents an extremely unusual situation in which the auditor received more than $50 million in fees in one year, and even then the New Hampshire court only found a strong inference of scienter based on a long list of other allegations.

Supp. 2d 1308, 1333 (M.D. Fla. 2002); *Grand Lodge*, 550 F. Supp. 2d at 1372.  In its

Opening Brief, KPMG showed that the so-called "red flags" alleged by Plaintiffs were

generic, did not relate to any purported backdating, and were not indicative of any wrongful

conduct at Jabil.  KPMG Br. at 32-35.  Plaintiffs offer very little substantive response, but

instead demonstrate a basic lack of understanding of what constitutes a "red flag" in terms of

an auditor's conduct in performing an audit.  *Id.* at 34-35.[9]

> <u>Violation of Jabil's Stock Option Plan</u>:  Perhaps the most bewildering

supposed "red flag" is Plaintiffs' argument that the accounting error was a red flag in and of

itself.  Opp. Br. at 32-33.  The circularity of this argument belies response.  Courts routinely

disregard supposed "red flags" that "consist primarily of rehashes of the GAAP violations."

*Holmes v. Baker,* 166 F. Supp. 2d 1362, 1379 (S.D. Fla. 2001); *see also Visteon*, 2008 U.S.

App. LEXIS 20994, at *39-*40 (citing *PR Diamonds, Inc*., 364 F.3d at 695 (distinguishing

"[t]wo of the purported red flags [that] simply repeat the alleged GAAP improprieties" from

the "genuine red flag")).

> <u>Late Filed Forms 4</u>:  Plaintiffs' Opposition, like the Complaint, fails to explain

how late filed Forms 4 from before 2002 should have been a red flag for KPMG's audits in

2004 and 2005.  Opp. Br. at 33-34.  Indeed, Plaintiffs fail to cite a single case in which a

---

[9] Plaintiffs' fundamental misunderstanding of the concept of a "red flag" is underscored by the great weight they place on the 2006 PCAOB Report.  Opp. at 18 ("report is powerful corroborating evidence of KPMG's severe recklessness concerning its audits of Jabil").  As shown, this report does not concern the time period of audits challenged by the Plaintiffs.  KPMG Br. at 33 n.21.  Moreover, the Report itself "cautions against drawing conclusions about the comparative merits of the annually inspected firms based on the number of reported deficiencies in any given year.  The total number of audits reviewed is a *small portion* of the total audits performed by these firms, and the frequency of deficiencies identified does not necessarily represent the frequency of deficiencies throughout the firm's practice."  Report, at 1 (emphasis added).  Undeterred, Plaintiffs take a final shot in the dark by suggesting that KPMG *cannot* say Jabil is *not* the company referenced in the report.  Opp. Br. at 19.  This is not a particularized allegation.

court found that the late filing of Forms 4 was a red flag for *auditors*.  *See id.* at 32-33.

Rather, the cases cited by Plaintiffs involved shareholder derivative actions in which the

plaintiffs alleged that the officers and directors knew of the misdating of options by virtue of

late Forms 4 that they themselves filed.  *See In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d

986, 1006 (N.D. Cal. 2007) (in derivative case alleging that certain executives backdated

options, court finds that late-filed Forms 4 by the executives may contribute to evidence that

they knew about the backdating).  *Zoran*, like the other cases cited by Plaintiffs, never

mentions the auditors or whether auditors should have seen the late filings as a red flag.[10] *Id.*

        __Embezzlement__:  Without any supporting authority, Plaintiffs continue to argue

that an embezzlement scheme by a regional controller of Jabil's "warranty and repair

division" was a red flag for options backdating.  Opp. Br. at 30-32.  They do not explain the

connection between the embezzlement scheme and the present case, and there is none.  *See*

KPMG at 26 n.15 (citing *In re Faro Sec. Litig.,* 2007 WL 430731, at *16 (M.D. Fla. Feb. 3,

2007)) ("Plaintiff fails to show how knowledge of a former official's embezzlement should

have put [auditor] on notice" of alleged corporate wrongdoing unrelated to the

embezzlement.); *In re Recoton Sec. Litig.*, 358 F. Supp. 2d 1130, 1147-48 (M.D. Fla. 2005)

("D&T's knowledge that Recoton had pled guilty in 1999 to falsifying customs documents"

was "unrelated to any of the particular allegations of fraud in the Complaint").

---

[10] Similarly, the other cases cited by Plaintiffs do not find that late-filed Forms 4 were either red flags for auditors or supported a strong inference of scienter.  *See In re Finisar Corp.*, 542 F. Supp. 2d 980, 994 (N.D. Cal. 2008) (dismissing complaint because "the allegations do not support a conclusion that the Forms 4 were late because the later-reported grants were backdated"); *Winters v. Stemberg*, 529 F. Supp. 2d 237, 243, 252 (D. Mass. 2008) (dismissing complaint against executives because plaintiffs' allegation that late-filed Forms 4 "can be a sign of stock option backdating" failed to "adequately plead a strong inference of scienter"); *In re Cirrus Logic, Inc.*, 2008 U.S. Dist. LEXIS 71195, at *12 (W.D. Tex. Aug. 28, 2008) (late filings, combined with admissions that executives had knowledge of backdating, sufficient to excuse demand requirement).

Incentive Bonus Structure.  Ignoring this Court's prior ruling, Plaintiffs allege that the Company's incentive bonus structure was a red flag that KPMG failed to investigate. Opp. Br. at 27.  The Court already rejected this argument, observing that incentive bonus compensation "attaches to executives in every company" and in the case of Jabil, was not in any way "extraordinary."  Mem. Op. at 31 (Plaintiffs' "bonus allegations yield no material inference of scienter as to any defendant.").  It defies reason to argue that an ordinary bonus compensation program should have placed the outside auditors on notice of misconduct specifically related to the dating of stock option grants at Jabil.

In the end, Plaintiffs' Opposition confirms what KPMG argued in its Motion to Dismiss:  Plaintiffs' allegations of scienter consist of nothing more than mischaracterizations, hyperbole, and speculation.  This is patently insufficient to infer a "cogent" and "compelling" inference of scienter as to KPMG.

## III.   PLAINTIFFS FAIL TO PLEAD PARTICULARIZED FACTS SHOWING THAT ANY KPMG STATEMENT WAS FALSE.

In addition, Plaintiffs offer no meaningful response to their failure to allege with particularity, pursuant to Rule 9(b), that KPMG lacked a genuine belief in or reasonable basis for the opinions rendered.  KPMG Br. at 37-42.  *See D.E. & J. Ltd. v. Conaway*, 284 F. Supp. 2d 719, 740 (E.D. Mich. 2003); *Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1176 (10th Cir. 2006) (audit report is a statement of opinion and actionable only when the auditor lacks a genuine belief in its accuracy).  Instead, Plaintiffs ignore the ample authority cited by KPMG and in the same conclusory terms that plague their Complaint, merely list auditing standards and then speculate that KPMG must have violated them because ultimately Jabil restated certain financial statements.  Opp. Br. at

11.  That is not enough.  It is well established that even properly conducted audits may not detect errors in financial statements.  KPMG Br. at 26 n.14.  *See, e.g., In re IKON Office Solutions, Inc. Sec. Litig.*, 277 F.3d 658, 673 (3d Cir. 2002) (unqualified audit opinion "does not guarantee that a client's accounts and financial statements are correct"); *Deephaven*, 454 F.3d at 1174 (auditor does not "guarantee" or "insure" financial statement accuracy).  It is not surprising that Plaintiffs fail to cite a single case supporting their contention that they have met this very stringent pleading requirement as to KPMG's opinions.  Opp. Br. at 6-12.

### CONCLUSION

The claims against KPMG should be dismissed with prejudice because, after over two years, it is clear Plaintiffs cannot state a claim against KPMG.

DATED: October 20, 2008                          Respectfully Submitted,


                                                 s/ Kevin H. Metz
                                                 Kevin H. Metz
David T. Knight                                  of LATHAM & WATKINS LLP
Florida Bar No. 0181830                          Admitted *Pro Hac Vice*
Brian L. Josias                                  District of Columbia Bar No. 494087
Florida Bar No 893811                            Kevin.Metz@lw.com
HILL, WARD & HENDERSON, P.A.
Post Office Box 2231                             Michele E. Rose
Tampa, Florida  33601-2231                       of LATHAM & WATKINS LLP
(813) 221-3900                                   Admitted *Pro Hac Vice*
(813) 221-2900 Facsimile                         District of Columbia Bar No. 474044
                                                 Michele.Rose@lw.com
Attorneys for KPMG LLP                           555 Eleventh Street, N.W. Suite 1000
                                                 Washington, DC  20004
                                                 (202) 637-2200/ (202) 637-2201 Facsimile

                                                 Attorneys for KPMG LLP

15

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the REPLY MEMORANDUM IN SUPPORT OF

DEFENDANT KPMG'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS

ACTION COMPLAINT was served on this 20th day of October, 2008 via the electronic filing

system ("ECF") on all counsel listed on the attached Electronic Mail Notice List.

I hereby further certify that I have mailed a copy of the above-mentioned document via

United States Postal Service to counsel who have not registered with ECF and appear on the

attached Manual Notice List.

<u>/s/ Kevin H. Metz</u>
Kevin H. Metz

Admitted *Pro Hac Vice*
District of Columbia Bar No. 494087

LATHAM & WATKINS, LLP
555 Eleventh Street, N.W.
Suite 1000
Washington, DC  20004
(202) 637.2338 / (202) 637.2201 Facsimile
Kevin.Metz@lw.com

# Mailing Information for a Case 8:06-cv-01716-SDM-EAJ

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

_ **Jonathan L Alpert**
JONALPERT@AOL.COM

_ **Patrick B. Calcutt**
calcuttlaw@tampabay.rr.com,calcuttadoptgena@tampabay.rr.com

_ **Michael L. Chapman**
michael.chapman@hklaw.com,kristen.labbate@hklaw.com

_ **William K. Dodds**
william.dodds@dechert.com

_ **Donald J. Enright**
denright@finkelsteinthompson.com

_ **Paul J. Geller**
pgeller@csgrr.com,e_file_fl@csgrr.com

_ **David J. George**
dgeorge@csgrr.com,e_file_fl@csgrr.com

_ **William E. Hoese**
whoese@kohnswift.com

_ **Brian L. Josias**
bjosias@hwhlaw.com,dalani@hwhlaw.com

_ **David Thomas Knight**
dknight@hwhlaw.com,lcampbell@hwhlaw.com

_ **Matthew J. Lang**
matthew.lang@dechert.com,bryan.block@dechert.com,luis.lopez@dechert.com

_ **Theodore J. Leopold**
tleopold@riccilaw.com,lcuomo@riccilaw.com

_ **Myles H. Malman**
myles@malman.com

_ _ **Tracy A. Nichols**
tracy.nichols@hklaw.com,brenda.scott@hklaw.com

_ _ **Jonathan H. Rosenthal**
jrosenthal@bellsouth.net

_ **Denis F. Sheils**
dsheils@kohnswift.com

_ **Steamship Trade Association/International etc Pension Fund**
Jonalpert@aol.com

_ **Shawn A. Williams**
shawnw@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.com

_ **Christopher M. Wood**
cwood@csgrr.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing).

**Joseph C. Kohn**
Kohn, Swift & Graf, P.C.
1 S. Broad St., Suite 2100
Philadelphia, PA 19107

**Andrei V. Rado**
Labation Sucharow & Rudoff LLP
100 Park Ave.
New York, NY 10017